UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VPN TECHNOLOGY HOLDINGS, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**MICROSOFT CORPORATION,**<br><br>Defendant. | **Case No. 6:24-cv-622**<br><br>**Jury Trial Demanded** |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VPN Technology Holdings, LLC ("Plaintiff" and/or "VTH") files this Complaint against Microsoft Corporation ("Microsoft" or "Defendant") for infringement of United States Patent No. 7,844,718 (hereinafter "the '718 Patent").

### PARTIES

1. Plaintiff is a Virginia limited liability company having an address at 8623 Braxted Lane, Manassas, Virginia 20110.

2. Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Washington with an established place of business at 10900 Stonelake Blvd. Suite 225, Austin, Texas 78759.  On information and belief, Microsoft may be served through its registered agent in the State of Texas: Corporation Service Company dba CSC - Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, TX 78701-3218.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 et seq. Plaintiff is seeking damages, as well as attorney fees and costs.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant transacts business within this District and elsewhere in the State of Texas and has appointed an agent for service of process in Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of VTH's patent in this District and elsewhere in the State of Texas.

6. Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages; the provision and support of physician networks; the provision and support of customer accounts; and further including maintaining physical facilities) its services in the State of Texas and in this District. Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

7. On information and belief, Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District. *See* Figure 1 below.



**Figure 1 – Microsoft Office in Austin**
(Source: Google Maps)

8. Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District.

## PATENT-IN-SUIT

9. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 7,844,718 (hereinafter "'718 Patent"). The '718 Patent is attached as Exhibit A.

10. The '718 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

11. Plaintiff possesses all rights of recovery under the '718 Patent, including the exclusive right to recover for past, present and future infringement.

12. The priority date of the '718 Patent is at least as early May 14, 2002. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

13. Plaintiff alleges infringement on the part of Defendant of the '718 Patent.

14. The '718 Patent relates generally to a system and method for automatically configuring a remote computer to establish a VPN connection with a network. *See* Abstract, '718 Patent. A configuration generator determines information necessary for the remote computer to establish the VPN connection, and generate an executable file to be run the remote computer. *Id.* When run on the remote computer, the executable file automatically updates the remote computer's configuration settings so as to enable it to establish the connection with the network. *Id.*

15. As noted, the claims of the '718 Patent have priority to at least May 14, 2002. The deficiencies in the state of the art as of the Date of Invention were highly problematic. One problem is that, in order to establish a VPN connection with related art systems, a network administrator needs to individually configure each remote computer so that the user will be able to access the local area network ("LAN"). This may require that the network administrator physically visit the remote location where the remote computer is, or alternatively may require that a remote user bring the remote computer to the network administrator. This can be very inconvenient and cause delay in configuring the remote computer. Additionally, when establishing the connection between the remote computer and the server, a remote user may be required to first access the remote user's Internet service provider, next access the gateway/router, and then access the LAN. Accordingly, there can be up to three levels of authentication that need to be traversed by the remote user to gain access to the LAN. This can be difficult for some users to properly navigate. *See* '718 Patent at 2:9-24.

16. One solution to this problem is to provide an HTML wizard that can provide instructions for a user to follow to configure a computer for remote access. However, because of

the complexity of properly configuring a remote computer for access, this method can prove ineffective. Additionally, even with the instructions, the process of configuring the remote computer can still be time-consuming. Finally, a user following the instructions of the wizard may still enter erroneous data, thus requiring a network administrator to first undo the mistake and then reconfigure the computer for remote access. *Id*. at 2:25-34.

19. The claims of the '718 Patent overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

20. The claims of the '718 Patent are not drawn to laws of nature, natural phenomena, or abstract ideas. The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

21. Further, the claims of the '718 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

22. The '718 Patent was examined by Primary United States Patent Examiner Yemane Mesfin. During the examination of the '718 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 709/229; 709/227; 726/5; and 726/15.

23. After conducting a search for prior art during the examination of the '718 Patent, the United States Patent Examiner identified and cited US Patent No. 6,092,200, US Patent No. 6,378,128, US Patent No. 6,496,858, US Patent No. 6,598,057, US Patent No. 6,735,766, US Patent No. 6,751,729, US Patent No. 6,839,759, US Patent Application Publication No. 2003/0208609, US Patent Application Publication No. 2003/0236865, and publication "Gain Control of Application Setup and Maintenance with the New Windows Installer," Microsoft Systems Journal, pp. 1-15, Sep. 1998 as the most relevant prior art references.

24. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '718 Patent to issue. In so doing, it is presumed that Examiner Mesfin used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Mesfin had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '718 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '718 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Mesfin.

25. The claims of the '718 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

26. The nominal expiration date for the claims of the '718 Patent is no earlier than February 22, 2025.

**ACCUSED INSTRUMENTALITIES**

27. On information and belief, Defendant sells, advertises, offers for sale, uses, or otherwise provides exemplary products, including at least the "Intune" product, which is a cloud-based endpoint management solution that has the capability to remotely configure multiple devices such as computers, laptops, and/or notebooks. Further, Intune allows an admin to configure a remote computer for a Virtual Private Network (VPN) by deploying VPN profiles. The foregoing are referred to as the "Accused Instrumentalities."

**COUNT I**
**(INFRINGEMENT OF UNITED STATES PATENT NO. 7,844,718)**

28. Plaintiff refers to and incorporates the allegations in Paragraphs 1 - 27, the same as if set forth herein.

28. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

29. Defendant has knowledge of its infringement of the '718 Patent, at least as of the service of the present complaint.

30. The '718 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

31. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 1, of the '718 Patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as Exhibit B) the Accused Instrumentalities which infringe at least Claim 1 of the '718 Patent. Defendant has infringed and continues to infringe the '718 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

32. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '718 Patent, by having its employees internally test and use these exemplary Accused Instrumentalities.

33. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

34. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '718 Patent. On information and belief, Defendant has also continued to sell the exemplary Accused Instrumentalities and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '718 Patent. See Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

35. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '718 Patent, literally or by the doctrine of equivalents, by selling exemplary Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims of the '718 Patent.

36. Exhibit B includes at least one chart comparing the exemplary '718 Patent Claims to the exemplary Accused Instrumentalities. As set forth in this chart, the exemplary Accused Instrumentalities practice the technology claimed by the '718 Patent. Accordingly, the exemplary Accused Instrumentalities incorporated in this chart satisfy all elements of at least claim 1 of the '718 Patent.

37. Plaintiff therefore incorporates by reference in its allegations herein the claim

chart of Exhibit B.

38. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

39. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

40. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

41. Plaintiff is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

42. Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent No. 8,938,718 (or, in the alternative, awarding Plaintiff running royalties from the time of judgment going forward);

(c) Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

(d) Award Plaintiff pre-judgment and post-judgment interest and costs; and

(e)    Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.


Dated:  December 5, 2024                    Respectfully Submitted,

*/s/ Randall Garteiser*
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

René A. Vazquez
Virginia Bar No. 41988
rvazquez@sinergialaw.com

**SINERGIA TECHNOLOGY LAW GROUP, PLLC**
18296 St. Georges Ct.
Leesburg, Virginia 20176
Telephone: (703) 89-2244

**COUNSEL FOR PLAINTIFF**